[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this action were married on September 1, 1970, at Wyandanch, New York. At the time of their marriage, the birth name of the plaintiff was Kersulis. The parties have two children who are in their majority, and who are presently attending college. No other minor children have been born to the plaintiff wife, and no public agency has ever been involved in the support of this family. The family has resided for the statutory period in the State of Connecticut. CT Page 1841
The parties were married prior to the completion of the defendant's education, and the plaintiff and defendant have been optimally employed, during the course of their marriage, based upon their training and experience. The defendant is currently the acting director of Public Works for the City of Danbury, and the, plaintiff has a full-time position with the United States Postal Service.
The parties moved to Connecticut shortly after their marriage, after the defendant had assisted the plaintiff's parents in the construction of a retirement home in Litchfield County. They were first generation Lithuanian immigrants, who resided in New York, and who planned to move to the country upon their retirement. The parties lived in the plaintiff's parents' home after it was finished, for a period of time. Their first child was born, and the parties both pursued their employment outside the home, working different shifts so that their daughter would be cared for by a parent. The defendant was working two jobs during the early part of their marriage, to save for the construction of their own home.
The parties purchased some land from her parents, and began construction on their home. They had their second child, one year after the birth of their first child. They were a very busy couple, and continued their efforts until their home was built. The plaintiff's parents did retire and move to their original home, which the parties had rented for One Hundred ($100.00) Dollars per month. The grandparents became instrumental in the care of the children, while the parties continued to work to complete their home.
The plaintiff took on part-time work after the birth of their second daughter, but was continually employed outside the home. The parties continued to work, and raise their family. The defendant built outbuildings which improved the property.
The plaintiff testified that the marriage was happy in the beginning, then became routinized due to their shared goals of creating a home and family life with their children. Their children prospered, as did the CT Page 1842 parties. However, it seemed from the testimony that their emotional life together as a couple was not fostered, but rather foundered. The plaintiff testified that she did not feel that the defendant ever acknowledged her desires to improve the interior of their home, and that any purchase that she wanted to make, which was major enough that she would consult him, received only grudging approval, and only after a period of time, where she felt she had to work very hard to be heard.
The defendant complained in his testimony that she was critical of every little thing that he did, and that she never made him feel that he was good enough, as a provider, or as a husband. He testified that she over-relied on her parents, and that she preferred her own family over the one they had created together. He described arguments, and the periods where they had gone to marriage counseling, at his request, based on his confrontations concerning how unhappy he was in the marriage.
The plaintiff testified that the arguments they had over things did not seem significant enough to her to be a threat to the marriage, and she perceived the relationship to be a normal marriage. They traveled with their children, engaged in activities surrounding the children, but she was not concerned about the fact that they had little passion left in their life as a couple. She denied that she was overly critical, and did not understand how he could give up all they had worked so hard for together. She was not convinced that the marriage had irretrievably broken down, and in her testimony tearfully admitted that she did not want to divorce.
The defendant has been the major bread winner, and has been responsible for organizing the finances for their daughters' college education. He claims that the property distribution, and allocation of periodic alimony take into account his present committment to their adult children.
The plaintiff does not want the divorce, and argues that she should be able to retain the marital home. She CT Page 1843 argues that if the defendant wants to be divorced, she should not have to suffer the additional loss of connection to her home.
The court has assessed the evidence in the case, and cannot find that either party has engaged in any conduct which could be considered fault. The breakdown of this marriage occurred over time for the defendant, and the plaintiff would have been satisfied with the emotional state of the marriage. The defendant has made up his mind, and did not delay the decision to move from the marital home until after the children had completed their college education, despite the fact that he testified that his feelings for the plaintiff had changed by the 1980's. The defendant has the ability to earn, even after he pays back loans for the childrens' education because of his age and his earning capacity, an amount which is double that of the plaintiff.
The children have received a number of scholarships and grants to partially fund their educations. The court acknowledges his moral committment to the education of the children, and while the court cannot order any post-majority support for those children, it appears that these parents are quite committed to their continued relationship with those children. In fact, the court believes that whatever property distribution occurs in this case, the children will be the ultimate beneficiaries of the hard work of this couple.
The court finds that the marriage has irretrievably broken down and grants a decree dissolving the marriage. The court has reviewed the evidence presented, along with the exhibits which have been admitted on behalf of the respective litigants, and has applied those facts to the statutory criteria ennunciated in C.G.S. Sec. 46b-81, et seq. The court has heard the arguments of counsel.
The court makes the following orders with respect to the financial issues of this dissolution:
1) REAL ESTATE: The defendant shall convey all of his right, title, and interest in and to the marital residence at Looking Glass Hill, Litchfield, Connecticut to the plaintiff. She shall be responsible for the CT Page 1844 mortgage thereon in the approximate amount of One Hundred, Fifteen Thousand ($115,000.00) Dollars, and hold the defendant harmless therefrom. The defendant shall continue to be responsible for the Equity Line of Credit in the amount of approximately Ten Thousand ($10,000.00) Dollars.
The plaintiff shall convey to the defendant all of her right, title, and interest in and to the rental property at 133-135 Washington Avenue, Torrington, Connecticut. He shall be entitled to all the 1996 rental income and all 1996 deductions attributable to those premises and shall indemnify the plaintiff against any and all liability, charges, claims or obligations hereafter arising out of the past or future operation of said premises, including, but not limited to, real property taxes, maintenance expenses, claims by tenants, claims or suits by any governmental authority or any other obligation.
2) ALIMONY: The defendant shall pay the sum of Three Hundred ($300.00) Dollars per week as periodic alimony. Such payment shall terminate upon the death of either party, the remarriage or cohabitation pursuant to the statute, of the plaintiff.
The defendant shall cooperate in providing benefits pursuant to COBRA for the plaintiff health insurance, if she desires such participation. She shall bear the cost of those benefits if she elects to participate. Each party shall be responsible for their unreimbursed health-related expenses. The evidence described their health as good.
The defendant shall maintain his life insurance for the benefit of the plaintiff who shall be named as irrevocable beneficiary, until such time as her obligation on the mortgage on the marital property has been extinguished, and his obligation to pay alimony has terminated.
3) PENSIONS: Each party shall retain their respective pensions free and clear of any claim from the other. The court finds that the mutual QUADRO's are not necessary to effect an equitable distribution of the CT Page 1845 marital estate, in light of the other awards of property herein, as well as allocation of the debt of the marriage, and award of alimony.
4) BANK ACCOUNTS: The plaintiff shall transfer all of her interest in the Torrington Savings Bank CD to the defendant.
5) SAVINGS BONDS: In light of the orders of the court, the plaintiff shall transfer to the defendant all of her interest in U.S. Savings Bonds with a value of Twenty-four Thousand, Six Hundred and four ($24,604.00) Dollars as noted on the financial affidavits. This order takes into account the defendant's arguments with respect to property distribution, and his moral committment to continue to provide for the educational support of the parties' adult children.
6) MISCELLANEOUS BANK ACCOUNTS: The parties shall retain all other accounts presently in their possession.
7) DEBTS: The defendant shall be responsible for the Equity Line of Credit on the marital home in the approximate amount of Ten Thousand ($10,000.00) Dollars. The parties shall be responsible for the debts listed on their respective financial affidavits, and hold the other harmless therefrom. The parties shall each be responsible for their respective counsel fees. The court was not persuaded that the parties had made a good faith effort to resolve their differences in any way prior to trial.
8) PERSONAL PROPERTY: The defendant shall retain his coin collection, which was not valued on the financial affidavits, but for which there is no claim by the plaintiff. The defendant shall have the personal property listed on his claims for relief, and shall retrieve those items within thirty (30) days, at a time that is mutually convenient for the parties.
9) AUTOMOBILES: The plaintiff will convey to the defendant all of her right, title, and interest in and to all vehicles owned by the parties, but for the Jeep Grand Cherokee which she currently drives. The parties shall be responsible for any outstanding loans on those CT Page 1846 vehicles, and shall pay all title and tax charges that apply to the respective vehicles.
10) DEPENDENCY EXEMPTIONS: While both parties have asked the court to award dependency deductions, the court declines. The court does not have jurisdiction over the issue of how the parties shall deal with the adult children and the Internal Revenue Service. Had they resolved their differences, they had the power to deal with the dependency exemptions; The court does not in light of the ages of the children. The plaintiff has requested an order with respect to continuing the health benefits for the adult children who may qualify for extended benefits through the defendant's employment. The court is without jurisdiction to order that continuation.
Judgment shall enter consistent with these orders. The order for spousal support shall continue during any period of appeal.
DRANGINIS, J.